UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FORIDA

CASE NO. 24-cr-20201-KMW

UNITED STATES OF AMERICA,

v.

DAVID KNEZEVICH,

    Defendant.

_____/

## MOTION TO COMPEL

David Knezevich ("Knezevich") through undersigned counsel, pursuant to Federal Rules of Criminal Procedure 5(f) and 16, as well as Knezevich's Fifth and Sixth Amendment protections, submits this Motion to Compel the United States to Comply with its Discovery and Due Process obligations.

## BACKGROUND

Knezevich is charged in a one count Indictment with kidnapping his wife, Ana Knezevich, and traveling in foreign commerce from Miami, Florida to Madrid, Spain, in violation of 18 U.S.C. § 1201(a)(1). The undisputed facts are that on January 27, 2024, Knezevich traveled to Belgrade through Istanbul.[1] Three or four days *after arriving in Serbia*, the Government alleges Knezevich commenced travel to Madrid, Spain. Whether Knezevich completing his travel in Serbia, and then allegedly embarking on a new trip from Serbia to Spain, constitutes *traveling in foreign commerce*

---

[1] It is undisputed that there are no direct flights from Florida to Belgrade and the only route is through Turkey, Switzerland, France, or Germany. Knezevich (and alleged victim, Ana Knezevich) have flown *this precise route* several times in the past few years to visit Knezevich's elderly, sick Mom. The Government is in possession of both Knezevich's and Ana Knezevich's passports confirming this.

1

as required to establish this Court's jurisdiction, will be addressed in a separate application to this Court.

At Knezevich's May 6, 2024 initial appearance, the Government was ordered pursuant to Rule 5(f), Fed.R.Crim.P., to comply with the Due Process Protections Act. (D.E. 7). Knezevich was arraigned on June 10, 2024, at which time the Court signed the Standing Discovery Order. (D.E. 23). Bond hearing testimony and Government discovery revealed that the Spanish National Police ("SNP") and the Federal Bureau of Investigation ("FBI") are the law enforcement agencies primarily responsible for the investigation that led to Knezevich's Indictment. This investigation has, almost exclusively, been conducted in Spain, by the SNP, with some ancillary investigative activities in Serbia, Colombia, and the United States. Search warrants were obtained in the Spain, Serbia, and the United States.[2]

While Congress has the authority, under certain limited and specific circumstances, to authorize jurisdiction over offenses allegedly occurring outside of the United States, an individual's Constitutional rights and the Government's obligations set forth in the Federal Rules of Criminal Procedure are not abrogated in extraterritorial prosecutions. Likewise, the constitutional based obligations of legal counsel to effectively represent their client does not evaporate in extraterritorial prosecutions.

In Knezevich's case, the importance of procedural and constitutional safeguards is even more pronounced given the investigative irregularities, abnormalities, and missteps that have already been uncovered. One example of these irregularities involved the case agent's detention hearing testimony that there was evidence of violence in Ana Knezevich's apartment based on the

---

[2] Despite the defense's requests for the affidavits and search warrants served in Serbia and Spain, the Government has yet to furnish translated copies of same.

presence of blood in multiple locations in the apartment. Contrary to this testimony, subsequent discovery revealed that, there was *no* blood found in Ana Knezevich's apartment.[3] That this critical testimony was erroneous was, in and of itself, shocking. It was also disturbing that the Government did not immediately seek to correct this testimony.

Another example of the irregularities or missteps in the investigation involves the reporting by Spanish authorities, in multiple reports, confirmed and repeated in FBI reports, that there was CCTV footage from outside Ana Knezevich's apartment of an individual on a scooter who was spray painting cameras on the day of the alleged disappearance. The Government now claims that there is no camera outside the building and therefore, those reports were also in error. (D.E. 52 at 14, n.5).

Compounding those instances of investigative abnormalities and errors, the defense recently established at the reopened detention hearing that the Government's description of certain video evidence—camera footage that the Government claimed captured an individual *with features similar to Knezevich rolling a suitcase* through the apartment building lobby—was indecipherable and did not reveal Knezevich with a suitcase at all. Knezevich would be remiss not to follow through and determine the genesis of these erroneous investigative conclusions, as well as evaluate potential additional investigative defects that undermine the Government's theory of prosecution.

It is with this background in mind that Knezevich seeks Court intervention related to discovery issues. Specifically, the defense seeks an order compelling the Government:

---

[3] The Government did not correct this error on its own. Not until July 16, 2024, after the defense sent the Government several emails over the course of several weeks requesting the blood analysis, did the Government finally send a one-page report written in Spanish, dated June 13, 2024, stating there was no blood found in the Madrid apartment.

3

1. To assist the defense with access to the alleged crime scene (one of the most fundamental responsibilities of a criminal defense attorney);

2. To provide documentation concerning the most basic form of *Brady* evidence (video of a mysterious individual on a scooter captured on an outside apartment building camera);

3. To provide the identification and documentation of witnesses concerning potential spoliation issues (the disappearance of video of a mysterious person on a scooter seen outside of the apartment building);

4. To provide identification of *Brady* witnesses;

5. To provide translated versions of scientific testing, including, but not limited to, test results that contradict testimony that blood was found at the alleged crime scene, as well as cell tower analysis;

6. To provide translations of all documents that the Government intends to introduce into evidence, and translation and production of all potential *Jencks* material;[4] and

7. To provide specific medical records of Ana Knezevich.

## ACCESS TO ALLEGED CRIME SCENE

On July 2, 2024, Knezevich's counsel requested assistance from the Government in gaining access to the alleged crime scene (Ana Knezevich's Madrid apartment and apartment building). On July 3, 2024, the Government responded, in part: "Because we do not have possession, custody, or control of the unit, the government is not able to give you access to the apartment in Spain. I think your best bet would be to *contact the Spanish National Police* to see if they can assist you

---

[4] While the timing of production of *Jencks* material prior to a hearing or trial is in the discretion of the Government, the defense seeks to avoid delays in hearings or trial because *Jencks* is produced in Spanish, as opposed to translated to English. Material writings in Spanish (and other foreign languages), such as executed search warrants, have not been translated into English.

with gaining entry into the unit." The Government's attempt to avoid any responsibility to facilitate Knezevich's access to the alleged crime scene contradicts its discovery obligations and all tenets of fairness. At a minimum, the Government should be arranging and coordinating with the SNP for Knezevich to have access to the alleged crime scene. The Government's "not my job" mentality, is precisely why the defense has been forced to file this Motion and urge this Court to issue an order compelling the Government to contact the SNP and request that arrangements be made for Knezevich to have access to the alleged crime scene.

Contrary to the Government's suggestion that the Government and the SNP lack a relationship that could facilitate Knezevich's counsel's access to the crime scene, the FBI and SNP are, and continue to be, investigative partners. Discovery documents evidence the SNP and the FBI continue to *jointly* investigate this case. FBI agents traveled to Madrid on May 26, 2024 to investigate, participate in, and observe activities in conjunction with the SNP. FBI witness interviews were conducted at SNP headquarters. FBI and SNP representatives "discussed case evidence and impending investigative actions." (Serial 139, Bates 10447).[5] SNP investigators drove FBI agents to what FBI reports describe as the "crime scene." *Id.* The FBI's trip to Madrid was "conducted with the approval of the Spanish Judge assigned to the case." *Id.*

The Government is aware the SNP has designated its investigation as "secret." Knezevich confirmed that the SNP "secret" classification prevents the SNP from discussing the case with Knezevich, let alone providing Knezevich with access to a crime scene. The Government recently claimed that the "Order of Secrecy" had expired. Upon being advised of this, Knezevich contacted a reputable Madrid law firm, Cases & Lacambra, who reached out to the SNP concerning its

---

[5] Knezevich is not filing reports on the public record given the protective order entered by the Court but will make the reports available for review upon the Court's request.

5

investigation. The SNP immediately advised Madrid counsel that the investigation remains under an *Order of Secrecy* and no information may be shared.

The same "secret" restrictions do not apply to law enforcement. When FBI agents traveled to Madrid, they, among other things, visited the alleged scene of the crime. The SNP also gave the FBI access to files and potential evidence, as well as all known witnesses.

Knezevich is charged with a serious crime that has a potential sentence of life imprisonment. The Government has taken the position that it does not have to provide access to the defense, because access is up to the SNP. The Government chose to indict Knezevich for alleged conduct that entirely took place abroad, and the Government has all the access it wants. The Government must be compelled to assist the defense in obtaining the same access to the evidence and information located in Madrid and elsewhere abroad that the Government enjoyed, including access to the alleged crime scene. Otherwise, the Government will benefit from a double standard in which the prosecution has access to information that the criminal defendant does not, in violation of the most basic due process constitutional guarantees under the Fifth and Sixth Amendments.

**THE DISAPPEARING VIDEO OF THE MYSTERIOUS MAN ON A SCOOTER**

FBI reports describe Spanish authorities reporting a man on a scooter whose presence was captured by CCTV cameras outside of the apartment building in Madrid on the day Ana Knezevich allegedly disappeared. Knezevich requested the Government produce the CCTV video. The Government failed to produce the CCTV video documented in multiple SNP reports and reiterated in many different FBI reports. The Government now claims that the video does not exist.

Knezevich assumes that the Government's representation that the video of the mysterious man on a scooter does not exist is based on representations from the SNP. While law enforcement

mistakes are not unique to investigations, the disappearance of a video of a mysterious man on a scooter captured outside of the alleged crime scene in Madrid, which is detailed in writing in numerous law enforcement reports, is outside the "just a mistake" category.

Given the foregoing, Knezevich requests an order compelling the Government: (1) to make a formal request to the SNP for outside camera footage of the mysterious man on the scooter; (2) to produce to the defense a copy of the Government's request to the SNP for this CCTV video evidence and the SNP's response to the Government's request; and (3) to produce all reports of Government investigation concerning the CCTV video, any outside Madrid apartment building cameras, the man on the scooter, and the SNP's new claim that CCTV video of a man on a scooter *never* existed.

Finally, Knezevich requests that any order compelling production require the Government to provide both the SNP's actual communications, as well as English translations of the communications.

### IDENTIFICATION OF SOURCES OF POTENTIAL *BRADY* EVIDENCE

Like the above references to footage of a man on a scooter, the defense also received in discovery several FBI reports referencing CCTV footage of a man spray painting of cameras *outside* Ana Knezevich's apartment building on the night she allegedly disappeared. This footage is sometimes referred to in conjunction with the scooter footage.

Agent Montilla testified about this footage before the Court on August 8, 2024. Despite multiple reports by different law enforcement agencies all containing references to this video footage captured by authorities in Spain, the Government now claims, in response to the defense's request, that this video does not exist and never existed. As with the scooter footage (if they are not one in the same footage), this is potential *Brady* evidence. The defense requests the same relief

7

as with the scooter footage, including the identification of the authors of the various SNP reports that reference this footage.[6]

In addition, the defense requests the identity of the person(s) at the Spanish National Police who advised there was a presence of a blood found in the apartment, as well as the identity of the person(s) who performed Luminol testing that was described as forensic examinations revealing the presence of blood. Agent Montilla testified that what is written in the FBI reports was, effectively, cut and pasted from Spanish National Police authorities' reports.

The Government picked the venue in this case against Knezevich, who is a United States citizen. As such he is entitled to due process, including the Government complying with the requirements of Rule 5(f) relating to *Brady* materials. The Government cannot circumvent its obligations by claiming reliance on evidence and reports prepared abroad, while washing their hands of any responsibility for providing access and discovery to Knezevich in a criminal prosecution in the United States.

### SCIENTIFIC REPORTS, DATA, AND EVALUATION OF DATA

Given that the entirety of the alleged conduct occurred outside of the United States, it is apparent that the Government acquiesced to the SNP securing and handling the evidence. Similarly, the scientific and other testing related to the case also took place in facilities outside of the United States. Consequently, data, test results, and reports are written in the language of the country where the testing took place.[7] The fact that reports were written in languages other than English does not absolve the Government of its responsibility to provide those reports and results

---

[6] The defense has identified the author of one SNP report, but there are many others where the authors remain unknown.

[7] Because this testing was done in a foreign country, the defense is entitled to review the procedures and protocols used to determine if the foreign testing passes scrutiny under applicable standards before this Court.

of scientific testing in English. Despite Knezevich's requests to the Government to produce reports in English, the Government has failed to provide any scientific reports in English.[8]

For example, the Government has put on substantial testimonial evidence regarding cell tower analysis and related reports.[9] The Government has alleged that Knezevich stole and used Serbian and Spanish license plates during the commission of the offense. In support of that allegation, Agent Montilla testified before Judge Williams at length about cell tower extractions and tying those extractions to the tracking of Knezevich's travel across Europe. (*See, e.g.,* D.E. 43-2 at 11:6-12:12; 16:3-9). Specifically, Agent Montilla testified that the Government was able to link stolen Serbian license plates to Knezevich based upon SNP extractions of cell tower information that put the stolen plates allegedly *within a 2-to-10-mile radius of Knezevich's cell phone.*[10] When the defense requested discovery on these cell tower extractions, the Government responded that it had not yet finalized reports or analyses, and Knezevich is not entitled to draft reports. Since the Government offered testimony in Court based on those reports, or drafts of reports, as a basis to detain the Defendant without bond, Knezevich is entitled to review these reports at this time under Rule 16 because they are material to the defense, *and* it appears the Government will rely on them in its case in chief at trial. *See* Fed.R.Crim.P. 16(a)(1)(F) (requiring

---

[8] Nor can the Government continue to be dilatory in producing these translations, as it will continue to impact the trial schedule.

[9] FBI reports also mention cell tower analysis to determine crime scene vicinity. *See, e.g.,* Serial 136 06/03/24. Bate Stamp 10438, "Special Agent Goodrich along with SNP analysis unit members conducted phone analysis and tower phone extraction through crime scene vicinity."

[10] Despite the testimony that Knezevich's phone was within a 2-to-10-mile radius of the stolen Serbian plates, there is no other evidence. Nor is there any evidence that that phone, allegedly belonging to Knezevich, was with him physically at that precise time. There are no photos of the plates on the car, and there are no tollbooth videos. The Government believes that the stolen Serbian plate was within 2-to-10-mile radius of Knezevich's phone. If the phone were in a car, parked near the stolen plate, it would have been picked up. That is hardly evidence of Knezevich stealing the plate and using it in the commission of the offense. Nevertheless, the defense is entitled to these extraction reports in English.

disclosure of results or reports of examinations and tests if they are within the government's possession, custody, or control, and they are material to preparing the defense or the Government intends to use them in its case-in-chief at trial).[11] In addition, the defense specifically requested Jencks for this witness before her testimony before Judge Williams and did not receive these documents.

Beyond this example, Knezevich requests that the Court compel the Government to produce all other scientific reports and documents involving the evaluation of data in each report's native language as well as in English. Knezevich requests that the order to compel include all data compilations be provided in English.

The Government's relationship with the SNP allows for the SNP to be the gatekeeper of information that is provided to the FBI and Government. Because the SNP does not function within the boundaries of our Constitution, *Brady* requirements, or the obligations of Rule 5(f) Fed.R.Crim.P., it is incumbent upon the Government to ensure all the materials and reports of the SNP are properly produced. It is the Government's obligation to acquire and produce *all* scientific tests and reports that have been performed abroad. Knezevich requests that this Court order the Government to request from the SNP *all scientific tests and test results* that have been performed, regardless of the results, to protect his Fifth and Sixth Amendment rights.

**IDENTIFICATION OF WITNESSES**

The defense is entitled to investigate facts related to Knezevich's defenses and interview witnesses on Knezevich's behalf. But the defense cannot do this most basic function of defense

---

[11] The Government also took the position that unless the defense was formally requesting expert discovery, it was not obliged to produce these reports. This position also lacks merit for the reasons stated above. Moreover, the testing produced in discovery this far, such as blood analysis, has been inaccurate. Basic due process entitles the defense to challenge this type of evidence under the right to confront.

counsel, in a foreign country, without permission and pertinent information. The Government should provide the defense with the names and contact information of all witnesses the SNP interviewed, particularly because some witnesses may have moved since February 2, 2024. The Government cannot circumvent its *Brady* obligations by claiming these materials are not within its possession, while they *are* in the possession of its investigative partner, the SNP.

      FBI Special Agent Montilla acknowledged that Ana Knezevich participated on dating sites. Since that time, the defense received documents in discovery from one of the dating sites which shows that Ana Knezevich was advertising herself as financially independent, emotionally intelligent, looking for new adventures, and alone in Madrid. The defense also obtained several audio messages that Ana Knezevich left her friends, in which she tells them about various men and women she has met, spoken with, gone out with, and had physical relations with. Agent Montilla confirmed that Ana Knezevich had been dating numerous people in Madrid and testified that the SNP interviewed "all of them." (D.E. 43-1 at 12:3-14). Yet, the thousands of pages of discovery only mention one man, and only reference his first name and his age.

      AUSA Monk advised the defense in a July 16, 2024 email that the Government requested all these statements/declarations from the SNP and will produce them in accordance with Rule 16. However, to date, none have been produced. It is incumbent on the Government to immediately obtain these statements. The Government should not be permitted to circumvent its obligations by claiming it is waiting for the SNP to provide them. Based on the discovery, it appears that whenever the FBI requested something of the SNP, it did not take months to receive. This too has caused great delays in the defense preparation and will cause a further delay in the trial date—through no fault of Knezevich.

Knezevich should not be forced to forfeit his Sixth Amendment and his Fifth Amendment right of due process and reveal in detail to the Government what he specifically intends and seeks to investigate. If this alleged crime occurred in the United States, the defense would be able to go and conduct its own investigation. Here, there is an "Order of Secrecy" that prevents the defense from effectively representing its client. Moreover, as discussed above, the Government has taken the position that it is not their obligation to assist the defense with access to protect the Knezevich's rights.

## TRANSLATIONS OF THOUSANDS OF PAGES OF DISCOVERY

As referenced throughout this motion, the defense has obtained thousands of pages of documents in discovery written in Spanish and other foreign languages. Originally, the Government took the position that it did not have to provide English translations of this discovery. After much back and forth, *near the end of June*, the Government finally acknowledged that it has a translating program in-house and will provide said translations. Since that time, defense counsel has emailed the AUSA several times to ask for an update as to *when* the translations will be provided. The AUSA has not responded. Thousands of pages, including witness statements, investigative reports, and documents related to search warrants issued abroad, are in Spanish. As none of defense counsel speak Spanish, this is truly a handicap Knezevich should not have to endure.

The cost to the defense of translating documents is prohibitive, as counsel demonstrated to the Government. The Government will seek to introduce certain of these documents and will be required to provide English translations accordingly. But the defense should not be forced to wait until trial exhibits are produced to see English translations. Knezevich is entitled to have his attorneys prepare and be able to *timely* review all discoverable documents to formulate theories of

defense. This case is being tried in the United States, and the defense is entitled to the documents in English. In the District of Puerto Rico, for example, it is common to receive many documents in Spanish. It has become customary in that District for the Government to provide all documents in Spanish *and English* as they are part of a federal investigation in the United States.

The Government must be compelled to produce English translations of all foreign language documents provided in discovery forthwith. This alone will cause a significant delay of the trial. Knezevich should not have to choose between his Constitutional rights to a speedy trial and receiving the documents in English.

### ANA KNEZEVICH MEDICAL RECORDS

Ana Knezevich's mental health is highly relevant in this case. For example, one of her closest friends reported to the SNP that she feared Ana Knezevich may have overdosed, as she had issues with self-harm in the past. (Serial 148, Bates 10507). Agent Montilla acknowledged these mental health issues during the Detention Hearing. (D.E. 43-1 at 18:3-6). Additionally, discovery includes witness references to Ana Knezevich taking medication while being under the care of one or more psychiatrists.

The defense requested Ana Knezevich's medical records from the Government. The Government first took the position that while it had dental and plastic surgery records, those documents were not relevant. The defense agreed that it did not seek these records and explained that it sought records relating to Ana Knezevich's mental health and psychiatric history, including medication, therapy, and references to potential self-harm.

The Government has produced one prescription for Ana Knezevich, prescribed by a doctor in Colombia. The Government has also provided reports that demonstrate the FBI has been collaborating the Colombian national authorities. As with other discovery discussed in this

13

motion, the FBI has access to this information and the ability to obtain these records. The Government must be compelled, at a minimum, to use good faith efforts to obtain these records, as Knezevich is entitled to them, but has no legal process means to obtain them.

## LEGAL ARGUMENT

a. Rule 16

Rule 16 of the Federal Rules of Criminal Procedure controls the Government's discovery obligations:

> the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's *possession, custody, or control* and: (i) the item is *material to preparing the defense*; (ii) the *government intends to use the item in its case-in-chief* at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed.R.Crim.P. 16(a)(1)(E) (emphases added).

For Rule 16, evidence is material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Smith*, Case No. 23-cr-20122, 2023 WL 8470610, *2 (December 7, 2023) citing *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993). The "materiality standard" is not a heavy burden. *United States v. Wasserman*, Case No. 20-cr-207, 2022 WL 17324426, *3 (November 29, 2022).

It is well established that Rule 16 is intended to provide a criminal defendant with the "widest possible opportunity" to inspect and receive evidence that may aid in presenting the defense case. *United States v. Daum*, 847 F.Supp.2d 18, 20 (D.D.C. 2012). "Rule 16 establishes the *minimum amount* of discovery to which the parties are entitled and is *not intended to limit* the judge's discretion to order broader discovery in appropriate cases." *United States v. Jordan*, 316

14

F.3d 1215, 1249, n.69 (11th Cir. 2003) citing Advisory Committee Notes to Fed.R.Crim.P. Rule 16 (emphasis added).

While the Government is not under an obligation to produce documents it does not possess, *where there has been a joint investigation* by United States and foreign law enforcement officials, United States officials should make a good-faith effort to obtain documents and statements. *See United States v. Paternina-Vergara*, 749 F.2d 993, 998 (2d Cir. 1984) (discussing joint U.S. and Canadian investigation where prosecutor satisfied discovery obligations by making good-faith efforts to obtain documents and summarize others); *United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) (finding Government satisfied good faith attempt requirement where record reflected disclosure of documents from Philippines and futile attempts by officials to obtain additional records and information).

No doubt, the Government's response to this Motion will be, in some form, that it does not have certain documents or information in its possession, custody, or control. But the defense is not asking the Court to compel the Government to produce documents it does not have. The defense is asking the Court to compel the Government to use and demonstrate good faith efforts to promptly get the defense access and information that the Government itself has enjoyed.

b. Rule 5(f)

Under the Due Process Protections Act, which created Fed.R.Crim.P. 5(f), the Government is reminded of its prosecutorial obligations under *Brady*. For the reasons discussed at length in the Motion, this case is the perfect example why the Due Process Protections Act, and the resulting Rule 5(f), was needed and is so important.

### c. Unequal Access to Evidence

"A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both sides have an equal opportunity to . . . information from which the truth may be determined." *Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966). Because the Government often marshals vast resources and machinery to accuse and try an individual with a crime, that individual may not be left to lesser resources if doing so would leave him unable to defend against the charge at trial. *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

Unequal access to evidence and witnesses abroad raises several Constitutional concerns, chief among them being the right to a fair trial. *See Skilling v. United States*, 561 U.S. 358, 378 (2010) (finding right to fair trial is "a basic requirement of due process."). A defendant's right to due process in a criminal trial is essentially the right to fair opportunity to defend against the Government's allegations. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).

Unequal access to evidence does not comport with fundamental fairness, which is necessary to ensure the integrity of our criminal justice system. *See California v. Trombetta*, 467 U.S. 479, 485 (1984); *see also* Frank Tuerkheimer, *Globalization of U.S. Law Enforcement: Does the Constitution Come Along?*, 39 Hous.L.Rev. 307, 369, 373 (2002) ("Disparity in access to process is wrong. It contravenes the underlying premises of the criminal justice system, international compacts, and an underlying sense of what is fair . . . [and] threatens the integrity of the fact finding process, enhancing the prospect that exculpatory evidence that might result in the acquittal of an innocent person remains inaccessible while nearby inculpatory evidence is gathered by the prosecution").

Here, the Government has taken full advantage of its joint investigation with the SNP. The Government has sent representatives to Madrid to review documents, visit the alleged crime scene,

16

gather evidence, review, and participate in obtaining search warrants and statements from witnesses, and to discuss the investigation with SNP officials, among others. The defense does not have that ability or access. When the defense attempted to obtain the most basic information from the SNP about the case, *the SNP* said that an Order of Secrecy over the investigation.[12] The defense and the Government are not on equal footing in this case, and it will take good faith efforts by the Government to remedy that Constitutional violation. *See United States v. Brazel*, 102 F.3d 1120 (11th Cir. 1997) (finding that a prosecutor may not avoid disclosure of relevant evidence by leaving it in the possession of another agency, while utilizing access to that evidence in preparing for trial; "such evidence is plainly within his Rule 16 control.") (internal quotations omitted).

Finally, to the extent the Government will claim that it has already attempted to obtain all evidence, information, and defense access in good faith, and there is nothing further it can do, those efforts should be detailed on the record for the Court to determine whether it is sufficient under the circumstances.

## MEET AND CONFER CERTIFICATION

Pursuant to Local Rule 88.9, undersigned counsel met and conferred with AUSA Monk in advance of filing this Motion. The Government opposes the relief sought.

**WHEREFORE,** Defendant David Knezevich respectfully requests entry of an order: (1) compelling the Government to use its best efforts, in good faith, to obtain access to the alleged crime scene, documents, and information from the SNP, as identified in this Motion; (2) requiring the Government to detail the steps it has taken, in good faith, to obtain evidence, information, and

---

[12] As such, there is no reason to believe that the "unreliable, inefficient, and discretionary letters-rogatory process" (*see* Rebecca Wexler, *Life, Liberty, and Data Privacy: The Global CLOUD, the Criminally Accused, and Executive Versus Judicial Compulsory Process Powers*, 101 Tex. L. Rev. 1341, 1343, 1361-62 (2023)), which can take years, would result in the SNP providing any meaningful information to Knezevich.

access from the foreign law enforcement agencies referenced in this Motion; (3) compelling the Government to comply with the requirements of Fed.R.Crim.P. 5(f); and (4) granting any other relief the Court deems just and proper.

Dated: August 21, 2024.

Respectfully Submitted,

| **By: s/ Jayne C. Weintraub, Esq.** | **By: s/ Bruce A. Zimet, Esq.** |
|---|---|
| Florida Bar No. 320382 | Florida Bar No. 0225053 |
| **SALE & WEINTRAUB, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 2 South Biscayne Blvd. | 1555 Palm Beach Lakes Blvd. |
| One Biscayne Tower – 21st Floor | Suite 1400 |
| Miami, Florida 33131 | West Palm Beach, FL 33401 |
| Tel: (305) 374-1818 | Tel:   (561) 508-7741 |
| Email: JWeintraub@SaleWeintraub.com | Tel:   (954) 764-7081 |
|  | Email: BAZ@BruceAZimetLaw.com |

**By: s/ Christopher Cavallo, Esq.**
Florida Bar No. 0092305
**NELSON MULLINS**
2 South Biscayne Blvd.
One Biscayne Tower – 21st Floor
Miami, Florida 33131
Tel: (305) 373-9465
Email: ChrisCavallo@NelsonMullins.com