UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FORIDA

CASE NO. 24-cr-20201-KMW

UNITED STATES OF AMERICA,

v.

DAVID KNEZEVICH,

    Defendant.

_____/

## RENEWED MOTION TO COMPEL ACCESS TO ALLEGED CRIME SCENE

    Defendant, David Knezevich, by and through undersigned counsel, respectfully submits this Renewed Motion to Compel regarding the defense's access to the alleged crime scene, per the Court's oral ruling at the hearing on September 11, 2024, and the Order (D.E. 74), and in support states:

    **I.    BACKGROUND**

    This case was investigated by the Spanish National Police ("SNP") and FBI personnel who are stationed in Madrid, along with FBI personnel who visited Madrid. The SNP and FBI have been investigating in coordination and deference to each other. There is at least one FBI agent stationed in Madrid who has been an integral part of this investigation. Discovery provided to date reveals that the SNP welcomed the FBI to Madrid to investigate the case jointly.[1] Specifically, the SNP escorted the FBI around Madrid, including at least one visit to the alleged crime scene at the

---

[1] As explained in Knezevich's previous motion to compel (D.E. 62), this discovery includes thousands of pages of FBI reports (302s) which show that this is a joint investigation between the SNP and the FBI.

1

apartment building, among other places. Moreover, the SNP and the FBI together took statements of witnesses in Madrid.

### II. GOVERNMENT PROCRASTINATION REQUESTING ACCESS FOR DEFENSE TO CRIME SCENE, AND REFUSAL TO PROVIDE WRITTEN REQUESTS, NECESSITATES JUDICIAL INTERVENTION

On August 21, 2024, Knezevich filed a Motion to Compel seeking, among other relief, that the Government be ordered to request assistance from the SNP for the defense to access the alleged crime scene, the apartment building, *and* apartment in Madrid. (D.E. 58). The defense was clear that access to the apartment building, including all common areas, stairwells, hallways, elevators, and cameras, was just as important as access to the apartment itself. In other words, it was equally important that the defense gain access to the apartment building, as opposed to just the apartment.

On September 11, Chief Magistrate Judge Torres heard argument from the parties on the Motion to Compel. (D.E. 71). At the hearing, the defense argued its position regarding access to the alleged crime scene. The Government objected and argued vociferously that the defense was not entitled to even attempted assistance from the Government in accessing the Madrid apartment building. The Government also maintained that the alleged crime scene is the apartment itself, and focused on arguing all the reasons the defense could not get access to the *apartment*, ignoring the importance of the rest of the building.

At the hearing, Chief Magistrate Judge Torres recognized the importance of the apartment building, stating:

> An inspection of a site, however, is specifically in Rule 16. … So given that connection and there are multiple inspections here. … But there is a second avenue where there was an inspection, ***which is maybe not the apartment, but the apartment building where the Government's evidence flows from, right? That certainly would be something that law enforcement would have more of an ability to control, right?***

(Transcript from hearing, attached as **Exhibit A**, at 19:13-19) (emphasis added). <u>Chief Magistrate Judge Torres specifically noted the relevance of the common areas of apartment building, such as the foyer, the staircase, and more. (Ex. A at 23:1-3)</u> (emphasis added).

As noted above, the Government disagreed with the Court adamantly, suggesting that Knezevich should file Letters Rogatory to gain access to the alleged crime scene. (Ex. A at 14:11-14). The Court correctly noted that Letters Rogatory is a very lengthy process (Ex. A at 21:4-7). **Chief Magistrate Judge Torres further reminded the Government that this is not a civil case and Knezevich is being detained; therefore, these issues must be resolved quickly**. (Ex. A at 21:10-12) (emphasis added).

    Throughout the hearing on the Motion to Compel, the Government tried to persuade the Court, contrary to the cases cited by the defense, that it has no obligation to assist under the circumstances. The Government took this position knowing full well that, if successful, it would be nothing short of denying Knezevich his due process rights.

    Ultimately, Chief Magistrate Judge Torres ordered the Government to request the assistance of the SNP, through the FBI ALAT in Madrid, for the defense to inspect the alleged crime scene. **This was the same process the FBI utilized to access the crime scene**. The Court also noted the ordered relief was well within the Government's obligation under Rule 16, and that the Government would ordinarily have to provide Knezevich with access to relevant locations and evidence. (Ex. A at 29: 21-24).

    **III.    GOVERNMENT DELAY IN REQUESTING ASSISTANCE AND REFUSAL TO SHARE REQUEST PROMPTS THIS MOTION**

    Over the following days, the Government refused to send the written request for assistance until Chief Magistrate Judge Torres entered his written order, even though Judge Torres' ruling

from the bench was clear. Thereafter, on September 23, 2024, the Court entered its written order granting in part Knezevich's Motion to Compel. (D.E. 74). That same day, undersigned counsel contacted AUSA Monk to inquire if the request had been made to the SNP through the FBI ALAT in Madrid, to which the AUSA replied that she made the inquiry but refused to share its contents with the defense.

On October 14, three weeks later, undersigned counsel again emailed AUSA Monk for an update, but received an automated reply that AUSA Monk was in trial. By this point, Chief Magistrate Judge Torres' oral ruling was over a month old, and the defense was still waiting to hear whether the SNP had responded to a simple request for assistance in visiting the crime scene. Given AUSA Monk's unavailability, the defense contacted her co-counsel, AUSA Obenauf, to request an update.

On October 18, four days later, AUSA Obenauf responded:

> The FBI ALAT has advised that the **SNP will not facilitate** a viewing of Ana's apartment without a court order from their Judge. **They suggested having David's Spanish lawyer petition the Spanish Judge to obtain access. That being said, we are willing to submit an MLAT request to obtain access…**

(emphasis added). Notably, AUSA Obenauf's response addressed only the defense's access to Ms. Knezevich's apartment. The response was silent as the defense's ability to enter the apartment *building*, as opposed to Ms. Knezevich's apartment itself, which may be rented and occupied. Given this, defense counsel inquired about access to the apartment *building*. AUSA Obenauf responded:

> I was told that SNP advised that Spain is a free country, and any person is free to visit any building they wish, but SNP will not escort you or facilitate your visit, unless the Spanish judge directs/orders them to do so. **So, I think we have the same issue with entering the apartment building since it is not open to the public.**

4

(emphasis added). AUSA Obenauf's response seemed to be an assumption the defense could not access the apartment building because it is not public, without confirmation that access to the apartment building was specifically *requested* of the SNP. Even though the Government has subsequently claimed it did make that specific request for assistance, the Government has refused to share the request with the defense, and the defense questions the clarity of the Government's request given that the FBI visited the apartment building through a request to the SNP. That same access is now being denied the defense and Knezevich, giving the Government the type of unfair advantage the rules of discovery were designed to prevent:

> The rules of discovery were designed to eliminate trial by ambush and to assure speedy, expeditious resolution of controversies on a **level playing field** where both sides have access to information which is helpful in a truth-seeking process and helps promote a just and fair resolution of controversies.

*In re: Hillsborough Holdings Corp.*, 118 B.R. 866, 869 (Bankr. M.D. Fla. 1990) (emphasis added).

The Government now claims, six weeks after the Court's oral ruling, that it will request an MLAT to try to help the defense get access. The Government's mantra is **delay**. <u>The Government is also disregarding Chief Magistrate Judge Torres' reminder that while lengthy MLAT and Letters Rogatory processes might work in a civil case, those same processes are problematic here where Knezevich is being detained pending trial and quicker action is required given such detention</u>. [Ex. A at 21:8-12].

**IV. DISCOVERY DEMONSTRATES THE GOVERNMENT'S EASE IN OBTAINING COOPERATION FROM THE SNP AND MADRID COURT**

As discussed above, the Government objected to assisting the defense with access to the apartment and apartment building on the basis that it may be a complicated process, among other things. (Ex. A at 23:10-24:25). AUSA Monk acted like she was not sure of the process but

5

anticipated it might not be as "simple" as Knezevich and the Court suggested. (Ex. A at 25:1-8). AUSA Monk objected to issuing an MLAT to assist with defense counsel viewing the alleged crime scene. (Ex. A at 25:9-18). When Chief Magistrate Judge Torres pressed the Government on details, the Government changed the subject.

**Recently obtained discovery shows just how simple the process of obtaining cooperation from the SNP and Madrid courts has been for the Government, contrary to what was represented at the September 11 hearing.** On numerous occasions, when the Government has needed approval from the SNP and Madrid courts to take certain actions, it has simply emailed the Madrid court. Without fail, the Madrid court responds approving the request within days. *See, e.g.:*

- Bates 144355 (email dated May 10, 2024, from U.S. Embassy to Madrid court requesting approval for U.S. law enforcement to participate in search);

- Bates 14356 (order dated May 13, 2024, approving request); Bates 14360 (email dated May 13, 2024, from Madrid court to U.S. Embassy attaching order approving U.S. law enforcement to participate in search);

- Bates 14362 (email dated May 14, 2024, from U.S. Embassy to Madrid court requesting approval for U.S. law enforcement to work cooperatively with SNP in analyzing telephone and mobile data records); and

- Bates 14367 (email dated May 17, 2024, from Madrid court to U.S. Embassy attaching letter of authorization for U.S. law enforcement to work cooperatively with SNP in analyzing telephone and mobile data records).[2]

---

[2] Knezevich is not filing these documents on the public record given the protective order entered by the Court but will make them available for review upon the Court's request.

This recent discovery shows that the Government can obtain approval from the Madrid court for substantial relief by simply sending the Madrid court an email request. There is no reason the Government should not have been able to get approval for defense counsel to visit the alleged crime scene using the same process. There is certainly no reason Knezevich should be forced to hire Spanish counsel to petition the Madrid court when the Government actively emails the Madrid court directly for assistance.

### V.  KNEZEVICH'S CONSTITUTIONAL RIGHTS ARE BEING DENIED

**1. The defense is obligated and required to inspect the alleged crime scene.**

On October 18, 2024, the Government filed a document stating that "the United States is evaluating whether to pursue capital-eligible offenses in this case . . ." (D.E. 86). This statement has changed the landscape of this case.

The ABA Guidelines for capital cases are the defining measure of performance of defense counsel in such cases, and "apply from the moment the client is taken into custody." American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003 Ed.), Guideline 1.1. Those words were carefully chosen "to make explicit that the Guidelines also apply to circumstances in which an uncharged prisoner who might face the death penalty is denied access to counsel seeking to act on his or her behalf." History of Guideline 1.1. To be sure, Knezevich is presently "uncharged" with a capital offense, and inspection of the crime scene is an essential aspect of counsel seeking to act on his behalf. Judge Weinstein made a finding that defense counsel's failure to investigate the crime scene in a capital case **"fell below an objective standard of reasonableness measured under prevailing professional norms**." *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 111-112 (E.D.N.Y. 2003) (emphasis added)

7

The Guidelines clarify that they "apply in any circumstance in which a detainee of the government may face a possible death sentence, regardless of whether formal legal proceedings have been commenced or the prosecution has affirmatively indicated that the death penalty will be sought." *Id*. (emphasis added). Further, a case "remains subject to these Guidelines until the imposition of the death penalty is no longer a legal possibility." *Id*.

Counsel has an obligation to inspect the crime scene "as soon as possible," particularly in cases with potential capital charges. *See, e.g.*, Commentary to Guideline 10.7. In 2015, the Administrative Office of the U.S. Courts' Defender Services Advisory Group adopted the National Legal Aid and Defender Association's (NLADA) Performance Guidelines for Criminal Defense Representations, which provide that counsel should view the scene of the alleged offense. Performance Guideline 4.1; *see also,* State Bar of Tex., Performance Guidelines for Non-Capital Criminal Defense Representation § 4.1(B)(8) ("[w]hen appropriate, counsel or an investigator should attempt to view the scene of the alleged offense as soon as possible after counsel is appointed or retained.").

This is a complex case. The defense has not yet received full discovery. Necessary investigation has not been conducted, including but not limited to witness interviews. Defense experts have not been engaged, because the appropriate areas have not yet been identified, and thus far, the government has completely failed to provide any expert disclosures. And, crucially, the case is in the pre-authorization stage of potential capital prosecution, meaning that the Government has not decided whether it will supersede to add capital charges and seek the death penalty. Given the combination of all those factors, as well as Knezevich's rights to due process,

8

effective assistance of counsel, the right to "present a complete defense,"[3] the prohibition against cruel and unusual punishment, and other constitutional protections, the defense team must be permitted to inspect the crime scene at this stage of the proceedings.

### 2. The Government should not be permitted to attend the inspection.

In a recent filing (D.E. 86), the Government told the Court that there is an ". . . outstanding request . . . for authorization from the Spanish government for defense counsel and government counsel to enter the Victim's apartment and apartment building, where the Victim resided at the time that she disappeared." The prosecution should not be permitted to inspect the premises *with* defense counsel.

In *United States v. DeLeon*, No. CR 15-4268 JB, 2017 U.S. Dist. LEXIS 35177, at *5 (D.N.M. Mar. 8, 2017), a case also involving the defense's inspection of the crime scene, the District Court "conclude[d] that it is appropriate under the law for the Defendants to view the evidence **at the upcoming evidence viewing without the United States' presence**," and therefore "will allow the sequestered viewing, and will further require that the United States not attempt to determine what occurred while the defense teams attended the viewing." *Id*. at 5.(emphasis added)

In the Court's view:

> [T]he presence of the United States will likely chill the production of work product, rendering the visits and inspections less useful. The Defendants are entitled to a robust site visit and examination, where they can talk, look at things, and do things outside of the United States' presence. **The Defendants are owed as robust of an opportunity to gather work product as possible consistent with security needs, and the United States' presence is likely to unnecessarily put pressure on that product and create an environment and atmosphere that does not facilitate work product development.** Thus, the Court cannot soundly rely on the work-product doctrine to create an environment for the creation of work

---

[3] "The Supreme Court has recognized that the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *United States v. Herman*, 997 F.3d 251, 269 n.8 (5th Cir. 2021).

>product, but it can use its powers under the Criminal Justice Act, 18 U.S.C. § 3006A, with its powers to supervise the effective administration of these complex cases to give the Defendants what they ask. The Court, accordingly, will grant the [Joint] Motion to Exclude [the Prosecution Team]. (emphasis added)

*DeLeon*, at \*201-02. In a later opinion, the Court further explained that **"[i]nspecting the physical evidence against them is essential to [the Defendants']** defense. The Defendants are entitled to view the physical evidence with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." That said, the Court did provide that "[w]hile the United States is not entitled to have a member of the prosecution team oversee the Defendants' review of the physical evidence, it may appoint someone knowledgeable to secure the inspected evidence and to maintain chain of custody." *United States v. DeLeon*, 428 F. Supp. 3d 716, 772-73 (D.N.M. 2019). Here, Knezevich has no objection to inclusion of such a provision in any Order the Court might enter.

Additionally, since part of the Government's case may involve videotapes or photographs which it or the Spanish law enforcement created, due process requires that the defense be provided equal access and opportunity. *See, e.g., State v. Tetu*, 386 P.3d 844, 857 (D. Haw.) ("A defendant's right to due process is infringed when defense counsel is forced to rely on materials provided by the government based on what the police or the prosecution deems relevant at a crime scene--that is, what is photographed, what is included in diagrams, or what is depicted in a video and then disclosed in discovery. In an adversarial system, the right to a fair trial may be compromised when the defendant is required to build a defense based upon the State's investigation."); *see also, People v. Alvarez*, 229 Cal. App. 4th 761, 779, 176 Cal. Rptr. 3d 890, 905 (2014) (In affirming dismissal based upon failure to preserve potentially exculpatory video, Court observed that **"[p]olice and prosecutors are more than willing to avail themselves of technology when it is to their**

10

**advantage; there must be a level playing field that gives defendants equal access to the same evidence. Equal and fair treatment in this respect is nothing less than the foundation upon which due process is built.**") (emphasis added).

This is particularly true here, when in this case there has already been more than one issue involving video tape recordings that the Government reported existed, then stated did not exist, as described in Knezevich's prior motion to compel.

### 3. Unequal access prejudices Knezevich, who is detained while the Government investigates him for other charges.

The Government fought tooth and nail against having to facilitate an inspection for the defense, arguing repeatedly it was not their obligation under Rule 16. When Chief Magistrate Judge Torres asked the Government about cases cited by the defense, which were contrary to the Government's position, the Government made speculative, theoretical arguments against requesting assistance, which were not based on the law. The Government cares only about delaying this case while it continues to investigate, with no regard for the defense's ability to prepare for trial or the fact that Knezevich is detained in the interim.

In its latest filing, the Government conceded that it needs to keep delaying these proceedings, while it investigates whether it will seek potential capital charges. (D.E. 86 at 4). Meanwhile, it has charged Knezevich with Kidnapping, which it cannot prove. The Government made a choice to start the proverbial speedy trial clock. Knezevich has now been detained for over five months since his arrest for kidnapping on May 4, 2024. Nothing has factually or legally changed since that date. The Government claims it made a "reactive arrest." (D.E. 86 at 3). In other words, the Government admits they were not prepared to make an arrest, but when Knezevich unexpectedly returned to the United States, knowing that he was a prime suspect in the open investigation, they arrested him and charged him with kidnapping as a placeholder.

11

Due Process requires that Knezevich be able to confront the evidence against him, including inspections of the evidence and the location of the alleged crime. Basic tenets of due process dictate that Knezevich is entitled to inspect the alleged crime scene and related evidence before he is tried for a crime the Government claims could result in life imprisonment, or worse, death. The Government chose the venue in which to prosecute this case, knowing that absolutely nothing occurred in the United States relevant to this case, as admitted by FBI Agent Montilla in the detention hearings. It cannot now impede Knezevich's access to the crime scene on the basis that the crime occurred in a foreign jurisdiction. Surely, the ALAT of the FBI assigned to the Madrid FBI office can secure permission for the defense to access the apartment building as it did for the Government in less than a week.

Defense counsel cannot properly prepare for trial without a thorough inspection of the alleged crime scene. Defense counsel cannot and should not have to rely on testimony of the FBI Agents as to the scene itself, **especially when it has already been made clear by the Case Agent's own admissions that, in large part, her reports just repeat what she was told by unnamed SNP officers, without confirmation**. Moreover, there are no photographs of the stairwell or the elevator. There are no photographs of the lobby area that are adequate to get the entire picture of the layout. These are critical areas where the Government is alleging Knezevich carried out his crime. To formulate cross examination and challenge certain theories the Government has already advanced, the defense must see the layout for itself, and should not be forced to accept the Government's representations, which, on several occasions, have already been proven wrong.

Unequal access to evidence and witnesses abroad, as between the Government and Knezevich, implicates fundamental constitutional rights. This includes Knezevich's right to a fair

trial, which is "a basic requirement of due process.'" *Skilling v. United States*, 561 U.S. 358, 378 (2010) (citation omitted); *see also Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.") (*citing Drope v. Missouri*, 420 U.S. 162, 172 (1975)); *see Gov't of Virgin Islands v. Riley*, 973 F.2d 224, 226 (3d Cir. 1992) ("It is axiomatic that one of the fundamental rights a defendant possesses is the right to a fair trial").

Particularly in a potential capital case, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). A prompt and thorough inspection of all relevant areas of the alleged crime scene is essential to Mr. Knezevich's "meaningful opportunity to present a complete defense."

### 4. "Heightened reliability"

Finally, the Government's injection of the possibility of "capital-eligible charges" implicates the Eighth Amendment's requirement of "heightened reliability" in such cases. *See*, e.g., *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("the Eighth Amendment requires a greater degree of accuracy and factfinding than would be true in a noncapital case."). For similar reasons to the argument above, a prompt and thorough inspection of all relevant areas of the alleged crime scene is also essential to the required "greater degree of accuracy and factfinding." *See also Roper v. Simmons*, 543 U.S. 551, 568 (2005) ("Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force."); *Sampson v. United States*, 832 F.3d 37, 43 (1st Cir. 2016) (noting that "an already significant legal question is even more so in the context of a capital case, because death is different.").

### 5. Potential witnesses

Moreover, the defense believes there are potential witnesses in the building who may have heard or seen something relevant the night Ms. Knezevich disappeared. Without being able to go to the building, the defense cannot thoroughly investigate which is essential to the preparation of his defense. Normally, the defense is entitled, without governmental interference, access to prospective witnesses. *United States v. Bennett*, 928 F.2d 1548 (11th Cir. 1991); *United States v. Pepe*, 747 F.2d 632 (11th Cir. 1984). While the Government has no duty, absent a court order, to present its witnesses for interviews, the Government does have a duty to not deny access. *Id*. If a defendant wishes to speak with a witness prior to trial, he or she is free to do so, provided the witness agrees to the meeting. To date, there has been no report provided to the defense of even a canvass of the building—the most basic and elementary tool used by investigators. If the defense is denied access to the building, so is this avenue of preparation and investigation.

## MEET AND CONFER

Pursuant to Local Rule 88.10, undersigned counsel met and conferred with the Government on the relief sought in this Motion. The Government objects to the relief sought.

## CONCLUSION

Knezevich is being detained on the charge of Kidnapping. A trial has been set for February 2025. The Government provides discovery in dribs and drabs, continuously delaying the probability of trial as scheduled. The Government has taken the position that it can indict Knezevich for actions in a foreign country where the alleged crime occurred, without any obligation to facilitate access for Knezevich to inspect the evidence against him, including inspection of the alleged crime scene. Meanwhile, the Government enjoys **full access** in this joint investigation between the SNP and the FBI.

Dozens of reports provided in discovery reflect this is a joint and collaborative investigation between the SNP and the FBI. The notion the Government suggests in its email of October 18, 2024, that Knezevich go hire counsel in Madrid, and petition the Court in Spain to gain access to the crime scene, for a case in the United States, is preposterous and offends the fundamental fairness of due process guaranteed to every defendant. This has been made clear by recent discovery, which shows that the Madrid courts give the Government substantial relief in a matter of days based on emails alone.

Chief Magistrate Judge Torres ordered the Government to contact their ALAT in Madrid, to facilitate access for the defense to visit the apartment and/or <u>apartment building</u>. The Government reported back that the SNP would not allow the defense to visit the <u>apartment</u>**.** Every other request by the Government has been graciously met by the SNP and or FBI in Madrid without much ado, such that the defense has reason to believe that the Government's request on this issue was not clear. As such, Knezevich requests that that the communications between the prosecution and Madrid relating to the defense's access to the alleged crime scene be made part of this record, forthwith. In addition, given documents obtained in discovery and the Government's representations since Magistrate Judge Torres' order on this issue, the defense renews its request for entry of an order requiring the Government to assist defense counsel in gaining access to the alleged crime scene.

**WHEREFORE**, the defense requests entry of an Order (1) requiring the Government to produce its communications related to the request for the defense to gain access to the alleged crime scene; and (2) requiring the Government to contact the ALAT once again to request assistance for the defense to access the alleged crime scene and if said request is denied, for the

15

ALAT or assigned FBI Agent to provide this Court with a reason why the defense cannot have the same access to the crime scene that was provided to the Government.

Dated: November 1, 2024.                                                        Respectfully Submitted,

**By: s/ Jayne C. Weintraub, Esq.**                         **By: s/ Bruce A. Zimet, Esq.**
Florida Bar No. 320382                                              Florida Bar No. 0225053
**SALE & WEINTRAUB, P.A.**                              **BRUCE A. ZIMET, P.A.**
2 South Biscayne Blvd.                                              1555 Palm Beach Lakes Blvd.
One Biscayne Tower – 21st Floor                            Suite 1400
Miami, Florida 33131                                                 West Palm Beach, FL 33401
Tel: (305) 374-1818                                                   Tel:    (561) 508-7741
Email: JWeintraub@SaleWeintraub.com              Tel:    (954) 764-7081
                                                                                   Email: BAZ@BruceAZimetLaw.com

**By: s/ Christopher Cavallo, Esq.**
Florida Bar No. 0092305
**NELSON MULLINS**
2 South Biscayne Blvd.
One Biscayne Tower – 21st Floor
Miami, Florida 33131
Tel: (305) 373-9465
Email: ChrisCavallo@NelsonMullins.com

16